Rosseii, J.
— Concurred with Pennington, J. in overruling the challenge, (a)
Challenge of the Chief Justice over-ruled.
The Court then proceeded to try the challenges against Rosset.e, J. and Pennington, J. As the facts were precisely the same, the same triors were charged with both challenges, which they heard at the same time: A. D. Woodruff, F. Davenport and Thomas P. Johnson, Esquires, were sworn as triors. It appeared in evidence to the triors, that while the said Justices Rossell and Pennington were on the bench', a motion had been made for, and leave obtained, to suggest on the record, the death óf one of the defendants, and an order made that the plaintiff proceed against the surviving defendant, under the provisions of our act of Assembly; Mr. Leake, on the part of the defendant, contended, that the justices, by sitting on the bench at the time of this proceeding, had formed and delivered an opinion in the cause, and therefore came within the meaning, intent, and Words of the act of Assembly, on which the challenges had been predicated. The triors found against the challenges. *147 The challenges having been thus disposed of, the motion for a new trial was proceeded in.
It appeared by the report of the Chief Justice, (which it is unnecessary to insert at length) that at the trial, the plaintiff set up a title, first from a purchase at sheriff’s sale, by his lessor, under an execution issued on [*] a judgment obtained in the Common Pleas of Burlington, in debt, at the suit of the lessor of the plaintiff, against Simpson, the deceased defendant, who had been in possession of the premises from 1780, until his death, which happened since the commencement of this ejectment, to wit: in 1806. — Second, from a survey made to the lessor of the plaintiff, and approved of by the counsel of proprietors, in 1803, for the same premises. The judgment on which the land had been sold, had been obtained during the existence of an act of Assembly, commonly denominated Clark’s Practice Act. This act dispensed with the enrolling of the judgment, and made the minutes and files of the Court, evidence of the judgment. The declaration was not on the files of the Court, and could not he found; and the entry of the judgment in the minutes of the Court, was defective, being in this form; after stating the action, “ The declaration in this cause having, judgment is ordered, on motion of, &c.” The words been filed, were omitted. The want of declaration, and the defect in the entry of judgment in the action on which the land was sold, was set up by the defendant’s counsel as an objection to the plaintiff’s title, so far as it respected the purchase at sherifPs sale. As to the survey, the defendant contended, that Simpson, under whom he claimed, being in possession at the time of the survey made and allowed, ought to have had six months notice, as required by the statute, Pat. 99, and for the want of such notice, the survey was void; and on these grounds, moved for a nonsuit. The Chief Justice over-ruled the motion for a nonsuit, and directed the jury to consider the judgment in the Common Pleas, as a regular and lawful judgment; and also directed the jury to find a verdict for the plaintiff — reserving the case, and allowing the defendant to move for a nonsuit thereupon at bar. The defendant, as before stated, had thought proper to move for a new trial.
Mr. Leake, for the defendant, now contended:—
1st. That the rule for the judgment in the Common [*] Pleas, was senseless and uncertain, and ought to pass for nothing.
2d. That the declaration was the essence of the action; when that was wanting, judges consider the judgment null and void; for which he cited 3 Blac. Com. 293, 2 Ld. Ray. 1410, Gilb. L. E. 17.
*148 He treated the practice act, existing at the time of obtaining the judgment, as a special authority, which must be strictly pursued; he cited the case of Penn v. Meeks,* in this Court the last term, as according with what he had advanced ; that the plaintiff never obtained a final judgment, even if the blank in the rule for judgment was filled np.
Mr. Griffith, for the plaintiff, said, that the plaintiff being a purchaser under public authority, was entitled to every benefit that the law could afford him ; that a sheriff’s deed, reciting an execution and judgment, is sufficient of itself to inaintain an ejectment; that a purchaser is not bound to Shew the judgment, as the execution is against the defendant, he might have applied to the court to quash it, if issued on no judgment; or if founded on an erroneous judgment, he might have brought a writ of error and reversed it; but could not have any relief in this indirect way; that an irregularity or error, could not be taken advantage of in this defence. If, however, it was necessary to prove a declaration, the entry of the judgment is evidence of it; that any matter might be shewn to prove the existence'of a record; that as to the notice, under the act of the Assembly, in the case of surveys, the act did not extend to this case.
Mr. Leake, in reply, said that a purchase at sheriff’s sale is not complete until the purchaser gets possession of the land.
. This Mr. Griffith denied.
[*JRosseei, J — Was in favor of a new trial; considering the title of the lessor of the plaintiff, deficient in both points.
Pennington, J.
— The principal question for the consideration and determination of this Court is, whether the judgment in the Common Pleas of Burlington, obtained by the lessors of the plaintiff, against the deceased defendant Simpson, is such a judgment as will enable the purchaserto hold land, levied on by virtue of an execution issued thereon, and sold under it. The reason and propriety of the thing leads to this manner of considering the subject. It would render titles to lands, very insecure, if every irregularity or informality in the proceedings on which the judgment was ■obtained, should vitiate the title, and tend very much to discourage purchasers at sheriff’s sales, to the great injury of ■defendants, whose lands would be suffered to pass out of their ■hands at an under value, from an apprehension that would be entertained by purchasers, that at a future day, the title would be defeated by some latentflaw in the judgment. The Legislature hath been so sensible of this, that it hath gone so far as to protect purchasers, even in cases of reversals of *149 judgments. This view of the subject, hath driven the counsel for the defendant, to contend, that the judgment in the Common Pleas is void ; in fact that it is no judgment. To this point the attention of the Court is, therefore, called. It is true, there is no judgment roll; but this was dispensed with at tlie time, by an act of Assembly; and by the same act, the minutes of the proceedings ami files of the Court, were substituted iu lieu thereof; by these it appears, that a capias bad been issued in the cause; that the defendant bad been taken thereon, and brought into court; that at a time according with the course of the practice of the court, judgment is ordered ; by the language of the entry of this order, a fair inference is to be drawn, that the declaration had been filed in due time, and execution was issued on this judgment, and no exception taken by the defendant [*] in any stage of the proceedings; the land was sold under the execution; and on an ejectment now brought to get into possession of the land, it is discovered by the defendant in this action, that the declaration in the Common Pleas cannot be found; it is not on the files of the Court. The question is not, whether the judgment in the Common Pleas is reversable for this cause, but whether it is void. I apprehend it is not. Here is an actual entry of judgment, on motion of the attorney for the plaintiff; “Judgment is orderedIf the title to land, sold under public authority, is to depend upon the care and diligence of a clerk in preserving every paper filed in his office, respecting the judgment on which the land is sold, who would purchase land depending on so precarious a title? Papers are not only exposed to accidents, but even to frauds and embezzlements. I am, on this point, of opinion, that the Chief Justice was right in refusing a nonsuit, and also, in directing the jury to find a verdict for the plaintiff, and that the rule asked for, ought to be refused. It is, therefore, unnecessary for me to give any opinion on the other point.
Kirkpatrick, C. J.
— Said that on more deliberate consideration of the subject, he was of opinion, that the proceedings in the Common Pleas could not be viewed as a judgment, and that his direction to the jury, on that point, was incorrect. But on the second point, that is, as to the validity of the survey, he was of opinion, that the lessor of the plaintiff, derived a good title from it, and, therefore, that the rule for a new trial ought to be refused.
By the Court.
— Motion for a new trial refused.
Mr. Leake, on another day, wished to be heard on the effect of the opinion of the Court in this cause, on the ground, that as the majority of the Court had not agreed in opinion on cither point raised, that there was no decision. But the Court said, that a majority of the Coui’t agreeing to refuse the motion, there was no difficulty or doubt as to the effect of such refusal.

 Vide Pen. 1051-3. — Ed.

See these Reports, page *151, Nov. term, 1806.